

**EOD**
08/03/2007

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| RICHARD HUIE and | § | Case No. 07-40627 |
| JACQUELINE HUIE, | § | |
| | § | |
| Debtors. | § | |

## MEMORANDUM OPINION AND ORDER

CAME ON TO BE HEARD the MOTION TO TERMINATE AUTOMATIC STAY, OR IN THE ALTERNATIVE FOR ADEQUATE PROTECTION (Docket #7) (the "Lift Stay Motion") filed by Monty and Bonnie Hobbs' (the "Hobbs"), the Hobbs' OBJECTION TO CLAIM OF EXEMPTION (Docket #9) (the "Exemption Objection"), and the Debtors' MOTION TO INVALIDATE LIEN UPON EXEMPT PROPERTY (the "Motion to Avoid Lien," together with the Lift Stay Motion, the "Motions"). The Court, having considered the Motions and the Exemption Objection, the evidence, and the applicable law, makes the following findings of fact and conclusions of law:[1]

### I. FINDINGS OF FACT

**A. Procedural Background**

1. The Debtors initiated this bankruptcy case by filing their Voluntary Petition (Docket #1) seeking relief pursuant to Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code") on March 29, 2007 (the "Petition Date").

---

[1] To the extent any of the following findings of fact are construed as conclusions of law, they are hereby adopted as such. To the extent any of the following conclusions of law are construed as findings of fact, they are hereby adopted as such. The Court reserves the right to make additional findings as necessary or as requested by any party.

2. The Hobbs filed a Proof of Secured Claim on April 20, 2007. The Hobbs assert a secured claim in the amount of $42,316.40 plus interest at a rate of 8.00% per annum until paid and $244 in court costs based on a state court judgment entered on or about September 25, 2006 in the Hobbs' favor and against the Debtors (the "State Court Judgment") in *Monty G. Hobbs, Sr. and Bonnie A. Hobbs v. Craig English, et al.*, Cause No. 9915 in the 62nd Judicial District Court of Delta County, Texas (the "State Court"). The Hobbs assert that their claim is secured by a judicial lien on the Debtors' real property located at 106 Holly Circle, Cooper, Texas (the "Home") in the full amount of the State Court Judgment.

3. The Hobbs filed the Lift Stay Motion on April 20, 2007, seeking an order of the Court terminating the stay imposed by Bankruptcy Code §362(a) (the "Automatic Stay") as to any action to foreclose on their interest in the Home. In the alternative, the Hobbs seek adequate protection for their interest in the Home.

4. The Hobbs filed the Exemption Objection on April 23, 2007. The Debtors, pursuant to Bankruptcy Code §522(b), have elected to claim the exemptions available to them under Texas state law in this bankruptcy case. The Debtors claim that the Home is their homestead pursuant to Texas law, and that the Home is therefore exempt from the claims of their creditors, including the Hobbs. The Hobbs object to the claim of homestead exemption only to the extent of their lien on the Home.

5. The Debtors filed the Motion to Avoid Lien on April 26, 2007, seeking to avoid the Hobbs' judicial lien on the Home pursuant to Bankruptcy Code §522(f)(1)(A). The Debtors also seek, pursuant to Bankruptcy Code §522(f)(1)(B), to avoid any lien that the

Hobbs claim on the Debtors' personal property as a result of abstracting and filing the State Court Judgment in Delta County, Texas.

6. The Court held a consolidated hearing on the Motions and the Exemption Objection on June 13, 2007. At the hearing, the Hobbs clarified that they are not claiming a security interest in any of the Debtors' personal property.

**B. The State Court Judgment**

7. On or about September 25, 2006, the Debtors became indebted to the Hobbs in the amount of $42,316.40 plus interest at a rate of 8.00% per annum plus $244 in court costs as a result of the State Court Judgment. A portion of the State Court Judgment ($14,000) was for the Hobbs' attorneys' fees.

8. The State Court Judgment was based on the state court's determination that the Debtors had wrongfully obtained funds from the Hobbs by committing fraud in a real estate transaction and that the Debtors had reinvested the fraudulently obtained funds in the Home. The State Court Judgment granted the Hobbs a lien on the Home for the full amount of the judgment. The State Court Judgment further provided that, if the judgment was not paid within thirty days of its entry, the Home would be sold by writ of execution to satisfy the judgment and that the costs of sale would be recovered from the sale proceeds. The Hobbs abstracted the State Court Judgment in Delta County, Texas, where the Home is located, on October 16, 2006.

9. The State Court judgment is a final judgment. The Debtors filed a notice of appeal but did not prosecute the appeal. The State Court Judgment is no longer appealable. The Debtors have not paid the State Court Judgment, and the full amount of the State Court Judgment remains due and owing to the Hobbs.

3

**C. The Home**

10. The Debtors purchased the Home in 2003. The Debtors moved into the Home soon after purchasing it and have, along with their minor children, continuously occupied the Home as their primary residence. The Debtors have registered the Home as their homestead with Delta County, Texas.

11. The Debtors put the funds fraudulently obtained from the Hobbs toward the purchase of the Home. The Home has a current value of approximately $126,000. The First National Bank in Cooper, Texas (the "Bank") has a purchase-money lien on the Home. The amount of the Bank's lien on the Home on the Petition Date was $68,222.98.

**D. The Hobbs' Claim**

12. As of the hearing on the Motions, the Debtors had not paid the Hobbs anything on their claim. The Debtors' Chapter 13 Plan (Docket #4) makes no provision for payment of the Hobbs' claim. The Debtors' original Chapter 13 Statement of Current Monthly and Disposable Income (Docket #3) does not list the Hobbs as secured creditors or list any payments to the Hobbs. The Hobbs also are not listed as secured creditors in the Debtors' original schedules (Docket #3). After the hearing on the Motions, the Debtors filed, among other things, an Amended Chapter 13 Statement of Monthly and Disposable Income (Docket #30) listing the Hobbs as secured creditors with a security interest in the Home and listing a 60-month average payment to the Hobbs of $858.10.

## II. CONCLUSIONS OF LAW

13. The Debtors argue that Bankruptcy Code §522(f)(1)(A) allows them to avoid the Hobbs' judicial lien on the Home, because the lien impairs a homestead exemption to which the Hobbs would otherwise be entitled. In response, the Hobbs argue that the

4

Texas homestead exemption does not apply to a home purchased with fraudulently obtained funds and, therefore, that they have a valid and enforceable lien on the Home. The Hobbs further argue that they are entitled to relief from the Automatic Stay because (i) their interest in the Home is not being adequately protected, (ii) the Debtors have little or no equity in the Home, and (iii) the Home is not necessary for an effective reorganization.

**A. Jurisdiction**

14. The Court has jurisdiction over the Motions and the Exemption Objection pursuant to 28 U.S.C. §§1334(a) and 157(a), and the United States District Court for the Eastern District of Texas' Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc*. These are core matters in which the Court may enter final order pursuant to 28 U.S.C. §§157(b)(2)(A), (B), (G), (K), and (O).

**B. Applicable Law**

15. By commencing this bankruptcy case, the Debtors created a "bankruptcy estate." The bankruptcy estate encompasses all of their legal and equitable interests in property as of the Petition Date, including any property that might be exempt. *In re Harrington*, 306 B.R. 172, 175 (Bankr. E.D.Tex. 2003) (citing 11 U.S.C. §541(a)). Bankruptcy Code §522(b) allows the Debtors to exempt certain property from their bankruptcy estate under either Texas state law (the place of the Debtors' domicile for the 730-day period prior to the Petition Date) or federal law. *See* 11 U.S.C. §522(b).

16. The Debtors in this case have claimed exemptions under Texas law. Therefore, the Court looks to the facts of this case and Texas law to determine the exemptible nature of the Debtors' interest in the Home. *See Zibman v. Tow*, 268 F.3d 298, 302 (5th Cir.

2001). Federal law, however, governs whether the Debtors can avoid the Hobbs' lien on the Home pursuant to Bankruptcy Code §522(f)(1)(A). *See Tower Loan of Miss., Inc. v. Maddox (In re Maddox)*, 15 F.3d 1347, 1356 (5th Cir. 1994) (applying *Owen v. Owen*, 500 U.S. 305 (1991)); *In re Kelly*, 133 B.R. 811, 813 (Bankr. N.D. Tex. 1991) (same).

**C. The Debtors' Motion to Avoid Lien**

<u>1. Bankruptcy Code §522(f)(1)(A)</u>

17. Bankruptcy Code §522(f)(1)(A) provides:

> Notwithstanding any waiver of exemptions …, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is – a judicial lien other than a judicial lien that secures a debt [for a domestic support obligation.]

18. 11 U.S.C. §522(f)(1)(A). "For a debtor to avoid a judicial lien under Section 522(f), two elements must be present: first, the lien at issue must have fixed on an interest of the debtor in property, and second, the lien must impair an exemption to which the debtor would have been entitled." *In re Cooper*, 202 B.R. 319, 322 (Bankr. M.D. Fla. 1995). "Both elements must be present for the lien to be avoided." *Id*. *See also In re Durban*, 2004 WL 3728576 at 4 (Bankr. N.D. Tex. 2004) (citing *Owen*, 500 U.S. at 310-11; *In re Maddox*, 15 F.3d at 1351-52; *Patriot Portfolio, LLC v. Weinstein (In re Weinstein)*, 164 F.3d 677, 680 (1st Cir. 1999)).

19. "The debtor has the burden of proof on motions seeking avoidance of a lien." *In re Shands*, 57 B.R. 49, 50 (Bankr. D. S.C. 1985) (citing *In re Piambino*, 45 B.R. 243(Bankr. S.D. Fla. 1984)); *cf. In re Montgomery*, 80 B.R. 385, 389-90 (Bankr. W.D. Tex. 1987) (failure of creditor to object to debtor's claimed exemptions does not relieve debtor of burden of proving that the creditor's lien on claimed exempt property should be

6

avoided pursuant to Bankruptcy Code §522(f)). The debtor must establish the avoidability of a lien by a preponderance of the evidence.[2] *See, e.g., In the Matter of Uhrich*, 355 B.R. 783, 788 (Bankr. D. Neb. 2006); *In re Fox*, 353 B.R. 388, 393 (Bankr. D. Conn. 2006); *Lindsey v. Spagnol (In re Lindsey)*, 313 B.R. 390, 393 (Bankr. W.D. Pa. 2004); *Soost v. NAH, Inc. (In re Soost)*, 262 B.R. 68, 74 (8th Cir. BAP 2001); *Lee v. Bank One, N.A. (In re Lee)*, 249 B.R. 864, 867 (Bankr. N.D. Ohio 2000).

### 2. Rooker-Feldman Doctrine

20. As a threshold matter, the Debtors argue in their post-trial brief that the Rooker-Feldman Doctrine, which generally prohibits federal courts other than the United States Supreme Court from reviewing state court judgments,[3] applies to the Court's lien avoidance analysis in this case. The Hobbs argue that the Rooker-Feldman Doctrine precludes the Court from setting aside any portion of the Hobbs' lien on the Home.

21. As noted *supra*, "although a state may … control what property is exempt under state law, federal law determines the availability of lien avoidance under §522(f) of the [Bankruptcy] Code." *In re Kelly*, 133 B.R. at 813 (applying *Owen*, 500 U.S. 305). *See also In re Maddox*, 15 F.3d at 1356 (same). This Court is not determining the merits of the State Court Judgment. Rather, the issue presented is whether the lien resulting from the State Court Judgment can be avoided pursuant to federal bankruptcy law. Therefore,

---

[2] Preponderance of the evidence means

> [e]vidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not. It is evidence which is more credible and convincing than the other evidence brought. The standard is more than a scintilla of evidence and less than clear and convincing.

*Sorrell v. Electronic Payment Systems, Inc. (In re Sorrell)*, 292 B.R. 276, 288 (Bankr. E.D.Tex. 2002) (internal citations and quotations omitted).

[3] *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983).

the Rooker-Feldman Doctrine does not preclude the Court from avoiding any portion of the Hobbs' lien pursuant to Bankruptcy Code §522(f)(1)(A).

### 3. Impairment of an Exemption to which the Debtors would Otherwise be Entitled

22. "[I]t is well settled in Texas that in order to establish homestead rights there must be proof of concurrence of usage and intent on the part of the owner to claim the land as a homestead." *Prince v. North State Bank of Amarillo*, 484 S.W.2d 405, 409 (Tex.Civ.App. – Amarillo 1972) (citing *McFarlane v. First Nat. Bank of Orange, Tex.*, 97 S.W.2d 754 (Tex.Civ.App. – Beaumont 1936, writ ref'd)). "[I]n order to create the homestead right there must be the combination of both overt acts of homestead occupancy and the intention to dedicate the property to homestead usage." *Id.* (citing *Roberson v. Home Owners' Loan Corp.*, 147 S.W.2d 949 (Tex. Civ. App. – Dallas 1941, writ dism'd jdgmt cor.)).

*23.* Here, the evidence establishes that the Debtors (i) purchased the Home in 2003, (ii) moved into the Home soon after purchasing it, (iii) have continuously occupied the Home with their minor children as their primary residence since then, and (iv) registered the Home as their homestead with Delta County, Texas. The Debtors, therefore, had the requisite "concurrence of usage and intent" to establish the Home as their homestead since 2003. *See Prince*, 484 S.W.2d at 409. There has been no proof or allegation that the size of the Home exceeds that allowed for a homestead under Texas law. *See* TEX. PROP. CODE §41.002 (Vernon 2006).

#### *a. The Fraudulently Obtained Funds*

24. Turning to whether the Debtors may set aside the Hobbs' lien pursuant to Bankruptcy Code §522(f)(1)(A), the Court must first determine whether the Hobbs' lien

"impairs an exemption to which [the Debtors] *would have been* entitled but for the lien itself" under Texas law. *Owen*, 500 U.S. at 310-11 (emphasis in original). If, by avoiding the Hobbs' lien, the Debtors would be entitled to claim the currently encumbered portion of the Home as exempt from the Hobbs' claim under Texas law, the Court will avoid the lien.

25. The Debtors, even in the absence of the Hobbs' judicial lien, *would not have been* entitled to an exemption for the Home in relation to the Hobbs' claim for the fraudulently obtained funds under Texas law because the Debtors used the fraudulently obtained funds to purchase the Home. *See Maryland Casualty Co. v. Schroeder*, 446 S.W.2d 117, 121 (Tex.Civ.App. – El Paso 1969, writ ref'd n.r.e.); *Baucum v. Texam Oil Corp.*, 423 S.W.2d 434, 442 (Tex.Civ.App. – El Paso 1967, writ ref'd n.r.e.); *First State Bank of Ellinger v. Zelesky*, 262 S.W. 190, 192 (Tex.Civ.App. – Galveston 1924, no writ); *Smith v. Green*, 243 S.W. 1006, 1007-08 (Tex.Civ.App. – Amarillo 1922, writ ref'd). The Debtors hold legal title to the Home in constructive trust for the Hobbs (in whom the equitable title vested) up to the amount of the fraudulently obtained funds. *Zelesky*, 262 S.W. at 192. *See also Schroeder*, 446 S.W.2d at 121; *Baucum*, 423 S.W.2d at 442; *Smith*, 243 S.W. at 1007-08. Quite simply put, under Texas law, the Debtors did not actually own the Home to the extent it was purchased with the Hobbs' money. *Id.*; *See also Schroeder*, 446 S.W.2d at 121; *Baucum*, 423 S.W.2d at 442. Therefore, the homestead exemption cannot be, and never could have been, used to shield the Home from the Hobbs' claim for the fraudulently obtained funds. *Id*. The Debtors may not invalidate the Hobbs' lien on the Home in the amount of the fraudulently obtained funds. *See* 11 U.S.C. §522(f)(1)(A); *see also Owen*, 500 U.S. at 310-11.

*b. Attorneys' Fees and Court Costs*

26. The Debtors argue that, even if the Court concludes that they are not entitled to avoid the Hobbs' lien arising from the fraudulently obtained funds, they may nonetheless avoid the Hobbs' lien to the extent that it secures repayment of the attorneys' fees incurred by the Hobbs. The Debtors argue that the $14,000 awarded to the Hobbs in the State Court Judgment for their attorneys' fees does not represent fraudulently obtained funds used to purchase the Home. The Court agrees and applies the same rationale to the Hobbs' claim for $244 in court costs.

27. But for the Hobbs' judicial lien for attorneys' fees and court costs, the Debtors would be entitled to exempt the Home from the Hobbs' claims for attorneys' fees and court costs under Texas law. *See Blankenship v. Wightman*, 2006 WL 1865635 at 2 (Tex.App. – Texarkana 2006, no writ) (citing *Heggen v. Pemelton*, 836 S.W.2d 145, 147-48 (Tex. 1992)); *Brunell v. Brunell*, 494 S.W.2d 621, 623 (Tex.Civ.App. – Dallas 1973, no writ) (following holding in *Jeter v. Jeter*, 281 S.W. 598 (Tex.Civ.App. – Dallas 1926)). Pursuant to Bankruptcy Code §522(f)(1)(A), the Hobbs' lien shall be avoided to the extent that it secures repayment of the Hobbs' attorneys' fees and court costs.

### 4. Fixing of a Lien on an Interest of the Debtors in Property

28. Although the Court's conclusion regarding the second element of Bankruptcy Code §522(f)(1)(A) is dispositive of the Motion to Avoid Lien, the Court will address the first element as well. The issue for the Court to decide with respect to the first element is whether the Debtors had an interest in the Home prior to the fixing of the judicial lien. "[U]nless the debtor had the property interest to which the lien attached at some point *before* the lien attached to that interest, he or she cannot avoid the fixing of the lien under

10

the terms of [Bankruptcy Code]§522(f)(1)." *Farrey v. Sanderfoot*, 500 U.S. 291, 296 (1991) (emphasis in original). Because the Debtors never actually owned the portion of the Home that was purchased with the fraudulently obtained funds,[4] the Hobbs' lien on that portion of the Home could not have fixed on an interest of the Debtors in property.

### 5. The Debtors' Personal Property

29. The Hobbs do not seek to enforce their judicial lien against the Debtors' personal property. The Hobbs have not objected to the Debtors' claimed exemptions for any of their personal property. There has been no allegation or proof that the Debtors purchased any of their personal property with the funds the Debtors fraudulently obtained from the Hobbs. To the extent the abstract of judgment that the Hobbs filed in Delta County, Texas affects a lien on any of the Debtors' personal property that has been properly claimed as exempt in this case pursuant to Texas law and Bankruptcy Code §522(b), such lien shall be avoided pursuant to Bankruptcy Code §522(f)(1)(B).

**D. The Exemption Objection**

30. The party objecting to a claim of exemption has the burden of proving that the exemption is not properly claimed. FED. R. BANKR. P. 4003(c); *Pequeno v. Schmidt*, 126 Fed.Appx. 158, 163, 2005 WL 513466 at 4 (5th Cir. 2005); *Painewebber, Inc. v. Murray*, 260 B.R. 815, 832 n.65 (E.D. Tex. 2001); *In re Starns*, 52 B.R. 405, 409 (S.D. Tex. 1985). This burden is by a preponderance of the evidence. *See Pequeno*, 126 Fed.Appx. at 163.

31. Here, the Hobbs request that the Debtors' claimed homestead exemption "be denied to the extent of [the Hobbs'] Claim in the amount of $42,316.40." Exemption

---

[4] *Zelesky*, 262 S.W. at 192. *See also Schroeder*, 446 S.W.2d at 121; *Baucum*, 423 S.W.2d at 442; *Smith*, 243 S.W. at 1007-08.

Objection ¶5. In light of the Court's conclusion that the Debtors are not entitled to avoid the Hobbs' lien for the fraudulently obtained funds, the Court also concludes that the Debtors have improperly claimed the Home as exempt from the Hobbs' claim for the fraudulently obtained funds. However, for the reasons previously discussed, the Court will sustain the Exemption Objection only to the extent of $28,316.40 (*i.e.*, the amount of the State Court Judgment less $14,000 in attorneys' fees).

**E. The Lift Stay Motion**

### 1. The Automatic Stay

32. Subject to limited exceptions not applicable in this case, the filing of a petition for relief automatically stays all acts against a debtor and against property of the estate. 11 U.S.C. §362(a).[5]  With respect to acts against estate property, Bankruptcy Code §362(c)(1) provides that the Automatic Stay terminates when the property is no longer property of the estate (*i.e.*, when the property is sold, abandoned, or returned to the debtor as exempt, or when a plan of reorganization is confirmed). 11 U.S.C. §362(c)(1). With respect to acts against a debtor, Bankruptcy Code §362(c)(2) provides that the Automatic Stay terminates when a case is closed or dismissed or when a discharge is granted or denied. 11 U.S.C. §362(c)(2).

33. Bankruptcy Code §362(d) sets forth two independent grounds under which a creditor or other entity may seek relief from the Automatic Stay. The moving party may seek relief for "cause, including the lack of adequate protection" under §362(d)(1) or, alternatively, under §362(d)(2) on the grounds that the debtor has no equity in the property *and* the property is not necessary for an effective reorganization. *See* 11 U.S.C. §362(d). The standards for relief under subsections (d)(1) and (d)(2) are independent and

---

[5] In Chapter 13 cases, a co-debtor stay also is imposed. *See* 11 U.S.C. §1301(a).

alternative – relief may be given under either subsection. *See id*. The Hobbs seek relief under both subsections.

34. The party seeking relief from the Automatic Stay has the burden of proving the debtor's lack of equity in the subject property. 11 U.S.C. §362(g)(1). This burden is by a preponderance of the evidence. *See, e.g., In re Winn-Dixie Stores, Inc.*, 345 B.R. 402, 406 n.2 (Bankr. M.D. Fla. 2006); *In the Matter of Foxcroft Square Co.*, 184 B.R. 671, 678 (E.D. Pa. 1995). The party opposing the request for relief from the Automatic Stay has the burden of proof on all other issues. 11 U.S.C. §362(g)(2). This burden is also by a preponderance of the evidence. *See e.g., In re W.B.S.S.*, 2007 WL 1175578 at 2 (Bankr. E.D.Tex. 2007) (citing *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 376 (1988)); *In re Triplex Marine Maintenance, Inc.*, 258 B.R. 659, 664 (Bankr. E.D. Tex. 2000); *Mass. Mutual Life Ins. Co. v. Shady Grove Tech Ctr. Assocs., Ltd. Partnership (In re Shady Grove Tech Center Assocs., Ltd. Partnership)*, 227 B.R. 422, 426 (Bankr. D. Md. 1998).

*a. §362(d)(1)*

35. Although the Debtors bear the burden of proof on the issue of adequate protection, the Hobbs must make a *prima facie* showing that their interest in the Home is not being adequately protected before the Debtors will be required to go forward with their evidence. *See In re Rogers*, 239 B.R. 883, 886-87 (Bankr. E.D. Tex. 1999) (citations omitted). *See also, e.g., In re Triplex Marine Maintenance, Inc.*, 258 B.R. at 664. The Court finds that the Hobbs made this showing. As of the date of the hearing on the Motions, the Debtors had not paid the Hobbs anything on their claim, their Chapter 13 Plan made no provision for payment of the Hobbs' claim, and their Chapter 13

Statement of Current Monthly and Disposable Income did not list the Hobbs as secured creditors or list any payments to the Hobbs.

36. Following the hearing on the Motions, the Debtors filed, among other things, an Amended Chapter 13 Statement of Monthly and Disposable Income listing the Hobbs as secured creditors with a security interest in the Home. The Debtors also listed a 60-month average payment to the Hobbs in the amount of $858.10. However, there is no evidence before the Court indicating that any such payments have ever been made to the Hobbs.

37. The Court is cognizant of the fact that the avoidance of a portion of the Hobbs' lien *may* ultimately reduce any monthly payments the Debtors' are required to make to the Hobbs under a confirmed plan in this case. The Court is just as cognizant of the fact that the Debtors have not made any payments to the Hobbs and that this case has been pending for approximately four months. The Court concludes that cause exists to condition the automatic stay on the Debtors' payment of $858.10 per month to the Hobbs to adequately protect the Hobbs' interest in the Home. If a confirmed plan provides for payments to the Hobbs, the adequate protection payments may stop.

*b. §362(d)(2)*

38. With respect to the Hobbs' request for relief from the Automatic Stay under §362(d)(2) of the Bankruptcy Code, the Hobbs failed to prove a lack of equity in the Home by a preponderance of the evidence. Because both a lack of equity *and* lack of necessity for an effective reorganization must be shown, the Hobbs are not entitled to an order lifting the Automatic Stay pursuant to Bankruptcy Code §362(d)(2).

### III. CONCLUSION AND ORDER

For the foregoing reasons, it is hereby:

**ORDERED** that the Motion to Avoid Lien is **GRANTED** in part and **DENIED** in part as set forth herein. It is further

**ORDERED** that the Hobbs' judicial lien on the Debtor's real property at 106 Holly Circle, Cooper, Texas is hereby partially avoided in the amount of $14,000 (plus the amount of any interest that has accrued on this portion of the State Court Judgment along with any court costs awarded in the State Court Judgment). It is further

**ORDERED** that any judicial lien resulting from the Abstract of Judgment filed in Delta County, Texas by the Hobbs that attached to any of the Debtors' personal property claimed as exempt in the Debtors' Schedule C is hereby avoided. It is further

**ORDERED** that all other relief sought by the Motion to Avoid Lien is hereby **DENIED**. It is further

**ORDERED** that the Exemption Objection is hereby **SUSTAINED**, and the Debtor's interest in the real property located at 106 Holly Circle, Cooper, Texas shall not be exempt from the Hobbs' claim in the amount of $26,316.40 plus interest on that amount at the rate specified in the State Court Judgment. It is further

**ORDERED** that the Automatic Stay is hereby modified as follows: The Debtors will make monthly payments to the Hobbs while this case is pending in the amount of $858.10, which shall be due on the first day of each month beginning on August 1, 2007. In the event that the Hobbs do not receive any such payment when due, the Hobbs may send written notice of default by Regular Mail and by Certified Return Receipt Requested Mail, postage prepaid, to the Debtors and their counsel in this case allowing the Debtors a

10-day period from the date of such written notice to cure such delinquent payments. Cure payments must be made by certified funds only and the Hobbs may charge the Debtors $50.00 for any notice given pursuant to this Order. In the event that the Debtors fail to cure such delinquent payments within such 10-day period or in the event that the Debtors become delinquent after **two (2) notices of default**, the Automatic Stay shall terminate as to the Hobbs without further recourse to this Court and the Hobbs shall be allowed to take any and all steps necessary to exercise any and all rights they may have in the real property located at 106 Holly Circle, Cooper, Texas. It is further

**ORDERED** that the Hobbs may immediately enforce and implement this Order modifying the Automatic Stay and that the provision of Federal Rule of Bankruptcy Procedure 4001(a)(3) shall not impede the enforcement and implementation of this Order. It is further

**ORDERED** that all other relief sought by the Lift Stay Motion is **DENIED** without prejudice to the Hobbs' right to seek such relief at a later date should the circumstances so warrant. It is further

**ORDERED** that nothing in this Order excuses the Hobbs from complying with any state law, including any notice requirements, regarding the Home.

Signed on 8/3/2007

_Brenda T. Rhoades_   MD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE