

08/08/2007

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| RICHARD HUIE and | § | Case No. 07-40627 |
| JACQUELINE HUIE, | § | |
| | § | |
| | § | |
| Debtors. | § | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the MOTION TO TERMINATE AUTOMATIC STAY, OR IN THE ALTERNATIVE FOR ADEQUATE PROTECTION (Docket #7) (the "Lift Stay Motion") filed by Monty and Bonnie Hobbs (the "Hobbs"), the Hobbs' OBJECTION TO CLAIM OF EXEMPTION (Docket #9) (the "Exemption Objection"), and the Debtors' MOTION TO INVALIDATE LIEN UPON EXEMPT PROPERTY (Docket #11) (the "Motion to Avoid Lien," together with the Lift Stay Motion, the "Motions"). The Court conducted a consolidated hearing on the Motions and the Exemption Objection on July 13, 2007. Having considered the evidence presented at the hearing, the parties' arguments, and the applicable law, the Court makes the following findings of fact and conclusions of law:[1]

### I. FINDINGS OF FACT

### A. Procedural Background

1. The Debtors initiated this bankruptcy case by filing their Voluntary Petition (Docket #1) seeking relief pursuant to Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code") on March 29, 2007 (the "Petition Date").

---

[1] To the extent any of the following findings of fact are construed as conclusions of law, they are hereby adopted as such. To the extent any of the following conclusions of law are construed as findings of fact, they are hereby adopted as such. The Court reserves the right to make additional findings as necessary or as requested by any party.

2. The Hobbs filed a Proof of Secured Claim on April 20, 2007, asserting a claim against the Debtors in the principle amount of $42,316.40 plus interest at a rate of 8.00% per annum plus $244 in court costs. The Hobbs' claim is based on a state court judgment entered on or about September 25, 2006 in the Hobbs' favor and against the Debtors (the "State Court Judgment") in *Monty G. Hobbs, Sr. and Bonnie A. Hobbs v. Craig English, et al.*, Cause No. 9915 in the 62nd Judicial District Court of Delta County, Texas (the "State Court"). The Hobbs assert that their claim is secured by a judicial lien on the Debtors' real property located at 106 Holly Circle, Cooper, Texas (the "Home") in the full amount of the State Court Judgment.

3. The Hobbs filed the Lift Stay Motion on April 20, 2007. The Hobbs seek an order of the Court terminating the stay imposed by §362(a) of the Bankruptcy Code (the "Automatic Stay") so as to allow them to foreclose on their interest in the Home. In the alternative, the Hobbs seek adequate protection for their interest in the Home.

4. The Debtors claim that the Home is their homestead under Texas law and that the Home is, therefore, exempt from the claims of their creditors, including the Hobbs. The Hobbs timely filed their Exemption Objection on April 23, 2007. In the Exemption Objection, the Hobbs object to the Debtors' claim of homestead exemption to the extent of their lien on the Home.

5. The Debtors oppose the Lift Stay Motion as well as the Exemption Objection. Additionally, on April 26, 2007, the Debtors filed their Motion to Avoid Lien, seeking to avoid the Hobbs' judicial lien on the Home pursuant to §522(f)(1)(A) of the Bankruptcy Code. The Debtors also seek, pursuant to §522(f)(1)(B) of the Bankruptcy Code, to avoid any lien that the Hobbs claim on the Debtors' personal property.

6. The Debtors and the Hobbs appeared and presented evidence at the consolidated hearing on the Motions and the Exemption Objection. At the hearing, the Hobbs clarified that they are not claiming a secured interest in any of the Debtors' personal property. The Court announced its resolution of the pending matters on July 25, 2007 for the reasons stated on that date and set forth more fully in this Memorandum Opinion and Order.

### B. Factual Background

#### 1. The Home

7. The Debtors purchased the Home in 2003. The Debtors moved into the Home soon after purchasing it and have, along with their minor children, continuously occupied the Home as their primary residence. The Debtors have registered the Home as their homestead with Delta County, Texas.

8. The Debtors used funds fraudulently obtained from the Hobbs to pay a portion of the purchase price of the Home. The Home has a current value of approximately $126,000. The First National Bank in Cooper, Texas (the "Bank") has a purchase-money lien on the Home. The amount of the Bank's lien on the Home on the Petition Date was $68,222.98.

#### 2. The State Court Judgment

9. Prior to the Debtors' bankruptcy, the Hobbs filed suit against the Debtors, among others, in the 62nd Judicial District of Delta County, Texas. The Hobbs asserted claims against the Debtors for (i) deceptive trade practices, (ii) common law fraud, (iii) fraud in a real estate transaction, (iv) negligence, (v) negligent misrepresentation, and (vi)

breach of contract. The Hobbs requested that the State Court award them their actual and exemplary damages as well as their attorneys' fees.

10. On or about September 25, 2006, the State Court entered the State Court Judgment in the principle amount of $42,316.40 plus interest at a rate of 8.00% per annum plus $244 in court costs. A portion of the State Court Judgment ($14,000) was for the Hobbs' attorneys' fees. The Hobbs abstracted the State Court Judgment and filed it of record in Delta County, Texas, on October 16, 2006.

11. The State Court Judgment is based on the State Court's determination that the Debtors wrongfully obtained funds from the Hobbs by committing fraud in a real estate transaction and that the Debtors reinvested the fraudulently obtained funds in their Home. The State Court Judgment grants the Hobbs a lien on the Home for the full amount of the judgment. The State Court Judgment further provides that, if the judgment is not paid within thirty days of its entry, the Home will be sold by writ of execution to satisfy the judgment.

12. The State Court judgment is a final judgment. The Debtors filed a notice of appeal but did not prosecute the appeal. The State Court Judgment is no longer appealable, and the full amount remains due and owing to the Hobbs.

13. The Debtors failed to list the Hobbs as secured creditors in their original bankruptcy schedules (Docket #3). As of the hearing on the Motions, the Debtors' Chapter 13 Plan (Docket #4) made no provision for payment of the Hobbs' claim, and the Debtors' Chapter 13 Statement of Current Monthly and Disposable Income (Docket #3) did not list the Hobbs as secured creditors or list any payments to the Hobbs. After the hearing on the Motions, the Debtors filed, among other things, an Amended Chapter 13

4

Statement of Monthly and Disposable Income (Docket #30), in which they listed the Hobbs as secured creditors and listed a 60-month average payment to the Hobbs in the amount of $858.10.

## II. CONCLUSIONS OF LAW

14. The Debtors argue that §522(f)(1)(A) of the Bankruptcy Code allows them to avoid the Hobbs' judicial lien on the Home because the lien impairs a homestead exemption to which the Hobbs would otherwise be entitled. In response, the Hobbs argue that the Texas homestead exemption does not apply to a home purchased with fraudulently obtained funds and, therefore, that they have a valid and enforceable lien on the Home to the extent of the State Court Judgment. The Hobbs further argue that they are entitled to relief from the Automatic Stay because (i) their interest in the Home is not being adequately protected, (ii) the Debtors have little or no equity in the Home, and (iii) the Home is not necessary for an effective reorganization.

### A. Jurisdiction

15. The Court has jurisdiction over the Motions and the Exemption Objection pursuant to 28 U.S.C. §§1334(a) and 157(a). These are core matters in which the Court may enter final order pursuant to 28 U.S.C. §§157(b)(2)(A), (B), (G), (K), and (O).

### B. Applicable Law

16. Upon the filing of a bankruptcy petition, an estate is created which includes all legal and equitable rights of the debtor as well as those interests recovered or recoverable through transfer and lien avoidance provisions. *See* 11 U.S.C. § 541; *In re Harrington*, 306 B.R. 172, 175 (Bankr. E.D. Tex. 2003). However, a debtor is permitted to "exempt" certain property from the bankruptcy estate. *See* 11 U.S.C. § 522. The

5

Supreme Court has described an exemption as "an interest withdrawn from the estate (and hence from creditors) for the benefit of the debtor." *Owen v. Owen*, 500 U.S. 305, 308 (1991).

17. In this case, the Debtors claim that their Home is exempt from the claims of their creditors under Texas law as permitted by §522(b) of the Bankruptcy Code. The Court, therefore, looks to the facts of this case and Texas law to determine the exemptible nature of the Debtors' interest in the Home. *See Zibman v. Tow*, 268 F.3d 298, 302 (5th Cir. 2001). To the extent the Home is eligible for exemption under Texas law, the avoidability of the Hobbs' lien on the Home is determined by reference to §522(f)(1)(A) of the Bankruptcy Code. *See Tower Loan of Miss., Inc. v. Maddox (In re Maddox)*, 15 F.3d 1347, 1356 (5th Cir. 1994); *In re Kelly*, 133 B.R. 811, 813 (Bankr. N.D. Tex. 1991).

### C. The *Rooker-Feldman* Doctrine

18. The Debtors argue in their post-trial brief that Texas law protects their homestead from the Hobbs' judicial lien and, specifically, that attorneys fees added as part of a state court judgment cannot be enforced against a homestead under Texas law. The Hobbs respond that the *Rooker-Feldman* doctrine precludes the Court from setting aside any portion of the Hobbs' lien on the Home. Because the *Rooker-Feldman* doctrine is jurisdictional, this Court must examine the parties' arguments before reaching the substance of the Debtors' Motion to Avoid Lien. *See, e.g., In re Singleton*, 230 B.R. 533, 533 (6th Cir. B.A.P. 1999).

19. The *Rooker-Feldman* doctrine draws its name from two Supreme Court decisions: *Rooker v. Fidelity Trust Co.*, 262 U.S. 413 (1923); and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The Supreme Court recently sought

6

to clarify the *Rooker-Feldman* doctrine in light of various interpretations "in the lower courts." *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp*, 544 U.S. 281, 291 (2005). As delineated by *Exxon Mobil Corp.,* "the *Rooker-Feldman* doctrine ... is confined to ... cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 1521-22.

20. In the present case, the Court is not reviewing the merits of the State Court Judgment. The issue for this Court to decide is not whether the State Court Judgment is correct, but whether the judicial lien resulting from the State Court Judgment can be avoided pursuant to federal bankruptcy law. The Court, therefore, concludes that the *Rooker-Feldman* doctrine does not preclude it from determining the avoidability of any portion of the Hobbs' lien under §522(f)(1)(A) of the Bankruptcy Code.

### D. The Debtors' Motion to Avoid Lien

#### 1. Bankruptcy Code §522(f)(1)(A)

21. Section 522(f)(1)(A) of the Bankruptcy Code permits avoidance of a "judicial lien" on the debtor's interest in real or personal property to the extent the lien impairs an exemption.[2] Bankruptcy Code §522(f)(1)(A) specifically provides:

> Notwithstanding any waiver of exemptions …, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is – a judicial lien other than a judicial lien that secures a debt [for a domestic support obligation.]

11 U.S.C. §522(f)(1)(A). A debtor must establish the avoidablity of a judicial lien by a preponderance of the evidence. *See, e.g., In the Matter of Uhrich*, 355 B.R. 783, 788

---

[2] A "judicial lien" is a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. §101(36).

(Bankr. D. Neb. 2006); *In re Fox*, 353 B.R. 388, 393 (Bankr. D. Conn. 2006); *Lindsey v. Spagnol (In re Lindsey)*, 313 B.R. 390, 393 (Bankr. W.D. Pa. 2004); *Soost v. NAH, Inc. (In re Soost)*, 262 B.R. 68, 74 (8th Cir. BAP 2001); *Lee v. Bank One, N.A. (In re Lee)*, 249 B.R. 864, 867 (Bankr. N.D. Ohio 2000).

<u>2. The Use of Fraudulently Obtained Funds to Purchase the Home</u>

22.     Two elements must be present for a judicial lien to be avoided: (i) "the lien at issue must have fixed on an interest of the debtor in property," and (ii) "the lien must impair an exemption to which the debtor would have been entitled." *In re Cooper*, 202 B.R. 319, 322 (Bankr. M.D. Fla. 1995). With respect to the first element, the Debtors must show that the lien at issue fixed on a cognizable equity interest of the Debtors in the Home. *See Farrey v. Sanderfoot*, 500 U.S. 291, 296 (1991). As the Supreme Court discussed in *Owen*:

> Property that is properly exempted under §522 is (with some exceptions) immunized against liability for prebankruptcy debts. §522(c). No property can be exempted (and thereby immunized), however, unless it first falls within the bankruptcy estate. Section 522(b) provides that the debtor may exempt certain property "from property of the estate"; obviously, then, an interest that is not possessed by the estate cannot be exempted. Thus, if a debtor holds only bare legal title to his house-if, for example, the house is subject to a purchase-money mortgage for its full value-then only that legal interest passes to the estate; the equitable interest remains with the mortgage holder, 11 U.S.C. § 541(d). And since the equitable interest does not pass to the estate, neither can it pass to the debtor as an exempt interest in property. Legal title will pass, and can be the subject of an exemption; but the property will remain subject to the lien interest of the mortgage holder. This was the rule of *Long v. Bullard*, 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886), codified in § 522….

*Owen*, 500 U.S. at 308-09.

23.     In this case, the Debtors used funds fraudulently obtained from the Hobbs to pay a portion of the purchase price of the Home. The Debtors, therefore, "took and

8

held the legal title … in trust for [the Hobbs], in [whom] the superior equitable title vested" to the extent the Debtors used the fraudulently funds to pay for the Home. *First State Bank of Ellinger v. Zelesky*, 262 S.W. 190, 192 (Tex. Civ. App. – Galveston 1924, no writ). *See also Maryland Casualty Co. v. Schroeder*, 446 S.W.2d 117, 121 (Tex. Civ. App. – El Paso 1969, writ ref'd n.r.e.) (a homestead cannot be a "haven for wrongfully obtained money or properties" because such property does not belong to the wrongdoer) (quoting *Baucum v. Texam Oil Corp.*, 423 S.W.2d 434, 442 (Tex. Civ. App. – El Paso 1967, writ ref'd n.r.e.)); *Smith v. Green*, 243 S.W. 1006, 1007-08 (Tex. Civ. App. – Amarillo 1922, writ ref'd) (plaintiff, a victim of fraud, could recover fraudulently obtained funds used for improvements to a home from the home's sale proceeds because the plaintiff at all times retained title to the funds). The judicial lien imposed by the State Court Judgment did not fix on an interest of the Debtors in the Home inasmuch as it was based on the Debtors' use of fraudulently obtained funds to purchase the Home. Rather, the judicial lien recognized, and was co-extensive with, the Hobbs' existing equitable interest the Home.

24. Moreover, with respect to the second element necessary to avoid a judicial lien, the Debtors *would not have been* entitled to exempt the Home from the Hobbs' claim for the fraudulently obtained funds. *See Baucum*, 423 S.W.2d at 442 ("It has long been decided that homestead and exemption laws of this State were never intended to be, and cannot be, the haven of wrongfully obtained money or property); *Zelesky*, 262 S.W. at 192 (property purchased with wrongfully obtained funds never becomes the property of the wrongdoer); *Smith*, 243 S.W. at 1007-08 (title to wrongfully obtained funds never passes to wrongdoer). Under Texas law, the Hobbs hold equitable title to the Home up to

9

the amount of the fraudulently obtained funds. *See Zelesky*, 262 S.W. at 192; *Schroeder*, 446 S.W.2d at 121; *Baucum*, 423 S.W.2d at 442; *Smith*, 243 S.W. at 1007-08. Texas law does not permit the Debtors to use their homestead exemption to shield the Home from the Hobbs' superior equitable interest in the Home. *See id*.; *see also Owen*, 500 U.S. at 308-09. Accordingly, the Debtors may not use §522(f)(1)(A) of the Bankruptcy Code to invalidate the Hobbs' lien on the Home in the amount of the fraudulently obtained funds. *See Owen*, 500 U.S. at 310-11.

### 3. The Hobbs' Attorneys' Fees

25.     The Debtors argue that, even if the Court concludes that they are not entitled to avoid the Hobbs' judicial lien arising from the fraudulently obtained funds, they may nonetheless avoid the Hobbs' judicial lien to the extent that it secures repayment of the attorneys' fees incurred by the Hobbs. The Debtors argue that the $14,000 awarded to the Hobbs in the State Court Judgment for their attorneys' fees does not represent fraudulently obtained funds used to purchase the Home. Although not raised by the Debtors, the same argument appears to apply to the Hobbs' claim for $244 in court costs.

26.     As previously discussed, in order to avoid the Hobbs' judicial lien for attorneys fees and costs under §522(f)(1)(A) of the Bankruptcy Code, the Debtors must establish that (i) they have an exemptible interest in the Home to the extent they used their own funds or funds borrowed from the Bank to purchase the Home and (ii) the Hobbs' judicial lien for attorneys' fees and court costs impairs their exemptible interest in the Home. "[I]t is well settled in Texas that in order to establish homestead rights there must be proof of concurrence of usage and intent on the part of the owner to claim the

land as a homestead." *Prince v. North State Bank of Amarillo*, 484 S.W.2d 405, 409 (Tex. Civ. App. – Amarillo 1972) (citing *McFarlane v. First Nat. Bank of Orange, Tex.*, 97 S.W.2d 754 (Tex. Civ. App. – Beaumont 1936, writ ref'd)). "[I]n order to create the homestead right there must be the combination of both overt acts of homestead occupancy and the intention to dedicate the property to homestead usage." *Id.* (citing *Roberson v. Home Owners' Loan Corp.*, 147 S.W.2d 949 (Tex. Civ. App. – Dallas 1941, writ dism'd jdgmt cor.)).

27. Here, the evidence establishes that the Debtors have a homestead interest in the Home. The Debtors (i) purchased the Home in 2003, (ii) moved into the Home soon after purchasing it, (iii) have continuously occupied the Home with their minor children as their primary residence since then, and (iv) registered the Home as their homestead with Delta County, Texas. The Debtors, therefore, had the requisite "concurrence of usage and intent" to establish the Home as their homestead since 2003. *See Prince*, 484 S.W.2d at 409.

28. Under Texas law, a homestead is generally exempt from seizure for the claims of creditors. That exemption not unlimited. Encumbrances may be properly fixed on homestead property for purchase money loans, taxes, and for stolen funds used to purchase the homestead, among other things. *See* TEX. CONST. art. XVI, §50; TEX. PROP. CODE Ann. §41.001. *See also Blankenship v. Wightman*, 2006 WL 1865635 at 2 (Tex.App. – Texarkana 2006, no writ) (citing *Heggen v. Pemelton*, 836 S.W.2d 145, 147-48 (Tex. 1992)); *Brunell v. Brunell*, 494 S.W.2d 621, 623 (Tex.Civ.App. – Dallas 1973, no writ) (following holding in *Jeter v. Jeter*, 281 S.W. 598 (Tex.Civ.App. – Dallas 1926)). However, the lien granted to the Hobbs for payment of their attorneys fees

pursuant to sections 17.50(d) and 27.01(e) of the Texas Business and Commerce Code and Chapter 38 of the Texas Civil Practices and Remedies Code – which were listed by the Hobbs as the statutory grounds for an award of attorneys' fees in their complaint in State Court – does not qualify as an encumbrance that is properly fixed on a homestead pursuant to the Texas Property Code or otherwise authorized by the Texas Constitution. *See* TEX. CONST. art. XVI, §50; TEX. PROP. CODE Ann. 41.001. The Court, therefore, concludes that, but for the Hobbs' judicial lien for attorneys' fees and court costs, the Debtors would be entitled to exempt their interest in the Home from the Hobbs' claims for attorneys' fees and court costs under Texas law.

### 4. The Debtors' Personal Property

29. The Hobbs do not seek to enforce their judicial lien against the Debtors' personal property. The Hobbs have not objected to the Debtors' claimed exemptions for any of their personal property. There has been no allegation or proof that the Debtors purchased any of their personal property with the funds the Debtors fraudulently obtained from the Hobbs. Thus, to the extent the abstract of judgment that the Hobbs filed in Delta County, Texas results in a lien on any of the Debtors' personal property that has been properly claimed as exempt in this case pursuant to Texas law and Bankruptcy Code §522(b), such lien shall be avoided pursuant to Bankruptcy Code §522(f)(1)(B).

### E. The Exemption Objection

30. The party objecting to a claim of exemption has the burden of proving that the exemption is not properly claimed. FED. R. BANKR. P. 4003(c); *Pequeno v. Schmidt*, 126 Fed.Appx. 158, 163, 2005 WL 513466 at 4 (5th Cir. 2005); *Painewebber, Inc. v. Murray*, 260 B.R. 815, 832 n.65 (E.D. Tex. 2001); *In re Starns*, 52 B.R. 405, 409 (S.D.

Tex. 1985). This burden is by a preponderance of the evidence. *See Pequeno*, 126 Fed.Appx. at 163.

31.     Here, the Hobbs request that the Debtors' claimed homestead exemption "be denied to the extent of [the Hobbs'] Claim in the amount of $42,316.40." Exemption Objection ¶5. Because the State Court determined that funds were fraudulently obtained from the Hobbs and used to purchase the Home, the Court concludes that the Debtors have improperly claimed the Home as exempt from the Hobbs' claim for the fraudulently obtained funds. *See Zelesky*, 262 S.W. at 192. However, for the reasons previously discussed, the Court sustains the Exemption Objection only to the extent of $28,316.40 (*i.e.*, the principal amount of the State Court Judgment less $14,000 in attorneys' fees).

### F. The Lift Stay Motion

32.     Subject to limited exceptions not applicable in this case, the filing of a petition for relief automatically stays all acts against a debtor and against property of the estate. *See* 11 U.S.C. §362(a).[3] With respect to acts against estate property, Bankruptcy Code §362(c)(1) provides that the Automatic Stay terminates when the property is no longer property of the estate (*i.e.*, when the property is sold, abandoned, or returned to the debtor as exempt, or when a plan of reorganization is confirmed). *See* 11 U.S.C. §362(c)(1). With respect to acts against a debtor, Bankruptcy Code §362(c)(2) provides that the Automatic Stay terminates when a case is closed or dismissed or when a discharge is granted or denied. *See* 11 U.S.C. §362(c)(2).

33.     Bankruptcy Code §362(d) sets forth two independent grounds under which a creditor or other entity may seek relief from the Automatic Stay. The moving party may seek relief for "cause, including the lack of adequate protection" under §362(d)(1)

---

[3] In Chapter 13 cases, a co-debtor stay also is imposed. *See* 11 U.S.C. §1301(a).

or, alternatively, under §362(d)(2) on the grounds that the debtor has no equity in the property *and* the property is not necessary for an effective reorganization. *See* 11 U.S.C. §362(d). The standards for relief under subsections (d)(1) and (d)(2) are independent and alternative – relief may be given under either subsection. *See id*. In this case, the Hobbs seek relief under both subsections.

34. The Hobbs have the burden of proving the debtor's lack of equity in the subject property. *See* 11 U.S.C. §362(g)(1). This burden is by a preponderance of the evidence. *See, e.g., In re Winn-Dixie Stores, Inc.*, 345 B.R. 402, 406 n.2 (Bankr. M.D. Fla. 2006); *In the Matter of Foxcroft Square Co.*, 184 B.R. 671, 678 (E.D. Pa. 1995). The Debtors have the burden of proof on all other issues. *See* 11 U.S.C. §362(g)(2). This burden is also by a preponderance of the evidence. *See e.g., In re Triplex Marine Maintenance, Inc.*, 258 B.R. 659, 664 (Bankr. E.D. Tex. 2000).

### 1. §362(d)(1)

35. Although the Debtors bear the burden of proof on the issue of adequate protection, the Hobbs must make a *prima facie* showing that their interest in the Home is not being adequately protected before the Debtors will be required to go forward with their evidence. *See In re Rogers*, 239 B.R. 883, 886-87 (Bankr. E.D. Tex. 1999). The Court finds that the Hobbs made this showing. As of the date of the hearing on the Lift Stay Motion, the Debtors had not paid the Hobbs anything on their claim, their Chapter 13 Plan made no provision for payment of the Hobbs' claim, and their Chapter 13 Statement of Current Monthly and Disposable Income did not list the Hobbs as secured creditors or list any payments to the Hobbs.

36. Following the hearing on the Lift Stay Motion, the Debtors filed an Amended Chapter 13 Statement of Monthly and Disposable Income listing the Hobbs as secured creditors with a security interest in the Home. The Debtors also listed a 60-month average payment to the Hobbs in the amount of $858.10. However, there is no evidence before the Court indicating that any such payments have ever been made to the Hobbs. The Court concludes that cause exists to condition the automatic stay on the Debtors' payment of $858.10 per month to the Hobbs to adequately protect the Hobbs' interest in the Home pending confirmation of a plan of reorganization in this case.

### 2. §362(d)(2)

37. With respect to the Hobbs' request for relief from the Automatic Stay under §362(d)(2) of the Bankruptcy Code, the Hobbs failed to prove a lack of equity in the Home by a preponderance of the evidence. Both a lack of equity *and* lack of necessity for an effective reorganization must be shown for relief from the Automatic Stay under §362(d)(2). The Court, therefore, concludes that the Hobbs' Lift Stay Motion should be denied to the extent it is based on §362(d)(2) of the Bankruptcy Code.

### III. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED** that the Motion to Avoid Lien is **GRANTED** in part and **DENIED** in part as set forth herein. It is further

**ORDERED** that the Hobbs' judicial lien on the Debtor's real property at 106 Holly Circle, Cooper, Texas is hereby partially avoided in the amount of $14,000 (plus the amount of any interest that has accrued on this portion of the State Court Judgment along with any court costs awarded in the State Court Judgment). It is further

**ORDERED** that any judicial lien resulting from the Abstract of Judgment filed in Delta County, Texas by the Hobbs that attached to any of the Debtors' personal property claimed as exempt in the Debtors' Schedule C is hereby avoided. It is further

**ORDERED** that all other relief sought by the Motion to Avoid Lien is hereby **DENIED**. It is further

**ORDERED** that the Exemption Objection is hereby **SUSTAINED**, and the Debtor's interest in the real property located at 106 Holly Circle, Cooper, Texas shall not be exempt from the Hobbs' claim in the amount of $26,316.40 plus interest on that amount at the rate specified in the State Court Judgment. It is further

**ORDERED** that the Automatic Stay is hereby modified as follows: The Debtors will make monthly payments to the Hobbs while this case is pending in the amount of $858.10, which shall be due on the first day of each month beginning on September 1, 2007. In the event that the Hobbs do not receive any such payment when due, the Hobbs may send written notice of default by Regular Mail and by Certified Return Receipt Requested Mail, postage prepaid, to the Debtors and their counsel in this case allowing the Debtors a 10-day period from the date of such written notice to cure such delinquent payments. Cure payments must be made by certified funds only and the Hobbs may charge the Debtors $50.00 for any notice given pursuant to this Order. In the event that the Debtors fail to cure such delinquent payments within such 10-day period or in the event that the Debtors become delinquent after **two (2) notices of default**, the Automatic Stay shall terminate as to the Hobbs without further recourse to this Court and the Hobbs shall be allowed to take any and all steps necessary to exercise any and all rights they may have in the real property located at 106 Holly Circle, Cooper, Texas. It is further

**ORDERED** that the Hobbs may immediately enforce and implement this Order modifying the Automatic Stay and that the provision of Federal Rule of Bankruptcy Procedure 4001(a)(3) shall not impede the enforcement and implementation of this Order. It is further

**ORDERED** that all other relief sought by the Lift Stay Motion is **DENIED** without prejudice to the Hobbs' right to seek such relief at a later date should the circumstances so warrant. It is further

**ORDERED** that nothing in this Order excuses the Hobbs from complying with any state law, including any notice requirements, regarding the Home.

Signed on 8/8/2007

*Brenda T. Rhoades*     SD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE